# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **BILLY ISON** | : | **Case Number:** 1:19-cv-155 |
| c/o Godbey Law LLC | : | |
| 708 Walnut Street, Suite 600 | : | **Judge:** |
| Cincinnati, Ohio 45202, | : | |
| | : | |
| **SANDRA ISON** | : | |
| c/o Godbey Law LLC | : | |
| 708 Walnut Street, Suite 600 | : | |
| Cincinnati, Ohio 45202, | : | |
| | : | |
| **ABBY ISON** | : | |
| c/o Godbey Law LLC | : | |
| 708 Walnut Street, Suite 600 | : | |
| Cincinnati, Ohio 45202, | : | |
| | : | |
| **CAROLYN DELL PATRICK** | : | |
| c/o Godbey Law LLC | : | |
| 708 Walnut Street, Suite 600 | : | |
| Cincinnati, Ohio 45202, | : | |
| | : | |
| **JAMES CULLEN** | : | |
| c/o Godbey Law LLC | : | |
| 708 Walnut Street, Suite 600 | : | |
| Cincinnati, Ohio 45202, | : | |
| | : | |
| Plaintiffs, | : | |
| -vs- | : | |
| | : | |
| **MADISON LOCAL SCHOOL** | : | |
| **BOARD** | : | |
| 1324 Middletown Eaton Rd. | : | |
| Middletown, Ohio 45042 | : | |
| | : | |
| Defendant. | : | |

## VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

1

Plaintiffs Sandra Ison ("Sandra"), Billy Ison ("Billy"), Abby Ison ("Abby"), Carolyn Dell Patrick ("Patrick"), and James Cullen ("Cullen") (collectively "Plaintiffs") state the following for their Complaint and Request for Declaratory, Injunctive, and Monetary Relief against Defendant Madison Local School Board ("the School Board"):

## **INTRODUCTION**

1. This is a lawsuit, brought under 42 U.S.C. 1983 and 1988, to remedy violations of all Plaintiffs' right to access and petition their government representatives and to freely express their opinions as to matters of political and public concern. Plaintiffs are all private citizens who have an interest in the policies and practices of the Madison School Board and who desire to speak publicly as to the School Board's newly-enacted armed teachers policy, as well as other matters pertaining to school and gun safety. Plaintiffs' interest in the School Board's firearm policies arose after an unfortunate school shooting that occurred at a Madison school in February of 2016. In response to this shooting, and largely behind closed doors, the School Board adopted a policy that allowed teachers to carry and brandish loaded firearms in elementary, middle, and high school classrooms. The School Board also severely disciplined students who participated in a national school safety walkout event, including one student who suffered life-threatening injuries in the February 2016 shooting. Plaintiffs philosophically, morally, and ethically oppose these actions by the School Board and desire to address the Board during the public participation portion of its meetings to raise their concerns with these policies. Their desire to speak publicly has been met with censorship and condemnation from the School Board. For example, the Board had Billy physically removed from a meeting because it did not like his point of view and has further prohibited Sandra, Billy, and Cullen from speaking at public meetings at all. In fact, the School Board has engaged in a concerted

2

campaign designed to chill and silence Plaintiffs from further public criticism of its actions by imposing prior restraints on Plaintiffs' ability to participate in public meetings and by fabricating requirements as barriers to public participation that do not appear in the School Board's written rules. In addition, the School Board maintains rules that are unconstitutionally vague, and overbroad, impermissibly content-based, not the least restrictive means of achieving the government's interest, and vest unbridled discretion in the School Board to censor protected expression. The School Board has relied upon these unconstitutional rules to restrain Plaintiffs' speech in violation of their First and Fourteenth Amendment rights. In the process, the School Board is and has been illegally discriminating against Plaintiffs' viewpoints and identities.

## **PARTIES**

2. Plaintiff Sandra Ison is a resident of Butler County, Ohio, whose child attends school in the Madison school district.

3. Plaintiff James Cullen is a resident of Clermont County, Ohio, which is adjacent to Butler County.

4. Plaintiff Abby Ison is a resident of Butler County, whose grandson attends school in the Madison school district.

5. Plaintiff Billy Ison is a resident of Butler County, whose grandson attends school in the Madison school district.

6. Plaintiff Carolyn Patrick is a resident of Butler County, Ohio.

7. Defendant is the duly-elected governing body for Madison Local School District in Butler County, Ohio. Its actions described in this Complaint are undertaken under color of state law.

## JURISDICTION AND VENUE

8. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, and Plaintiffs' claims are brought under 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the U.S. Constitution.

9. Venue is proper in the Southern District of Ohio under 28 U.S.C. § 1391 because all or a substantial amount of the events giving rise to Plaintiffs' claims occurred within this District.

## STATEMENT OF FACTS

10. Sandra is a local resident in the Madison school district, and her son attends its schools.

11. Billy is Sandra's father, and his grandson attends Madison schools.

12. Abby Ison is Sandra's mother, and her grandson attends Madison schools.

13. Cullen is Sandra's significant other and has maintained a long-term relationship with both Sandra and her son. Cullen is actively involved in taking Sandra's son to school events.

14. Carolyn Patrick is a resident of the Madison school district.

15. Sadly, a shooting occurred in one of the Madison schools.

16. Although no children were killed in the shooting, four children were injured.

17. After this unfortunate event, the School Board undertook policy changes related to this shooting.

18. Following the shooting, students in the Madison school district voluntarily participated in a national school walkout protesting gun violence.

19. The School Board maintained a policy that any student who attended the walkout event would receive excessive punishment for their participation. Upon information and belief,

the School Board has not imposed similarly excessive punishments on students who have participated in other political rallies or expressive events during school hours.

20. In addition, the School Board began discussing the possibility of arming its teachers, and ultimately adopted a policy which permits teachers to possess loaded firearms in elementary, middle, and high school classrooms, in the spring of 2018.

21. Sandra, Billy, Cullen, and other local families are opposed to the concept of arming teachers in the classroom because they believe it creates greater risks to students in the school.

22. According to the School Board's Rules of Public Participation posted online, any person with a "legitimate interest" in the School Board's actions may address the School Board during public participation for a limit of 3 minutes. (Exhibit 1). The term "legitimate interest" is not defined in the School Board's rules or elsewhere. In addition, the Rules do not facially limit speakers to geographic residency in the Madison school district.

23. The Rules further require only that attendees "register their intention to participate in the public participation portion of the meeting at least two (2) business days prior to the meeting." (Exhibit 1). The Rules do not indicate the manner in which speakers must register or to whom they must submit their registration.

24. The Rules further permit the presiding officer to "terminate" a participant's speech if it is "personally directed" or "antagonistic." (Exhibit 1).

25. Thus, the presiding officer has the unbridled discretion to restrain speech if it names one of the Board members, or is the presiding offers thinks it might antagonize someone.

26. Billy attended the May 2018 meeting, and he had provided 2 days prior notice to speak at the meeting.

27. Billy began discussing the punishment of the students, and he also began criticizing the School Board's decisions to arm its teachers.

28. Well before he reached the three minute limit, the School Board's members began interrupting him, they told him he could not say the things he was saying, and they ordered a deputy to remove and to silence him.

29. The armed deputy placed his arm on Billy's back and physically removed him from the public speaking area.

30. Following its unlawful removal of Billy from its public meeting, the School Board then began a concerted campaign to keep Billy and other like-minded citizens from speaking at its meetings. As part of this campaign, the School Board began fabricating and inventing rules to frustrate all Plaintiffs' ability to speak at the meetings.

31. For example, in January of 2019, Sandra, Abby, Cullen, and Patrick attended a meeting, and they had Billy deliver a form to the School Board on their behalf to register to speak more than two days before the meeting in compliance with the School Board's Rules.

32. When the time for public participation arrived on the agenda, the School Board refused to allow Sandra, Abby, Cullen, and Patrick to speak because it knew, based on Billy's prior comments, that they would criticize its gun policy.

33. Sandra confronted School Board President, Mr. French, and she asked him why the School Board would not let her speak.

34. When Sandra confronted French, Sandra told him that she had submitted her registration to speak on the School Board's form more than two days in advance.

35. French then informed Sandra that she could not speak unless she delivered her registration herself in person, rather than having some other person deliver it for her.

36. However, the School Board's Rules do not require in-person delivery, and Sandra and other members of the public were permitted to speak at meetings without delivering their registrations themselves in the past.

37. Indeed, the Rules do not limit registration, so under the express language of the Rules, any form of notification should suffice.

38. As this example illustrates, Defendant fabricated and invented a rule and thereby restrained Sandra's speech so she could not criticize the School Board.

39. The School Board has continued to fabricate rules in order to frustrate and chill speech.

40. As yet another example, the School Board now requires not only in-person registration, but also that all registration to speak be presented along with a photo ID and/or tax records to prove the speaker's identity and residence in the school district. The School Board imposes these requirements despite the fact that they are nowhere to be found in its official, published public participation rules. (See Exhibit 1).

41. In addition, these invented requirements impose undue and unlawful burdens on the right of free expression and the right to petition the government. For example, Sandra, like many other members of the public, has a job during the daytime. She is unable to arrive in person during the School Board's regular business hours in order to register to speak, because to do so would require her to take off work and to potentially lose income.

42. Upon information and belief, the School Board imposed its fabricated in-person registration requirement to keep people like Sandra from being able to publicly criticize its policies at its meetings.

43. This is not an isolated occurrence. Like Sandra, Abby and Carolyn Patrick also had Billy drop off their registrations, so they could speak at the January 2019 meeting.

44. As it did with Sandra, the School Board also refused to let Carolyn Patrick, Cullen, and Abby speak because they did not drop off their registrations in person at the district.

45. Thus, the School Board used the same fabricated rule in order to restrain Cullen's, Patrick's, and Abby's speech because of their viewpoints.

46. The School Board is also intentionally restraining Cullen's speech with another fabricated rule because of his viewpoints and identity.

47. Because Cullen does not live in the School Board's district, the School Board is not letting him speak at all, even though he has a long-standing, parent-like relationship with Sandra's son and even though he routinely participates in the educational activities of Sandra's son as well.

48. In order to restrain Cullen's viewpoint's, the School Board claims that any speaker must reside within the district and prove his residence by the submission of a photo ID or tax records. But its own rules say nothing of the sort. Rather, a person must only have a "legitimate interest" in the School Board's business to be eligible to speak.

49. Cullen has a close relationship with and is involved in the school activities of Sandra's son.

50. Thus, Cullen has a legitimate interest in expressing his viewpoints relating to the safety of Sandra's son and other children in the community.

51. The School Board's unilateral decision to interpret the term "legitimate interest" to mean residency within the district is an example of how its rules are vague and vest unbridled discretion in the Board to censor speech it does not like.

52. To better understand the School Board's position, Sandra emailed the School Board to ask why it is now requiring personal delivery and presentation of ID without formal change of the Rules. (Exhibit 2).

53. The School Board emailed in return that the Board has "interpreted" the Rules to require personal delivery.

54. In addition to demonstrating the unconstitutionality of its Rules, the Board's interpretation of the "legitimate interest" requirement violates Ohio's Open Meetings Act, as the Board passed no regulation, policy, or rule in an open meeting that would support its interpretation.

55. Furthermore, the School Board responded in an email to Sandra that it continues to require identification because the Rules only permit residents to speak at School Board meetings, even though this is not the case.

56. In addition to fabricating rules to deny Cullen and Sandra their right to state grievances, the School Board has taken other measures to chill and intimidate Plaintiffs.

57. For instance, when Sandra attends School Board meetings, two armed deputies now stand on both sides of her. This causes her to feel afraid that she will be physically confronted or required to leave should she attempt to express her point of view during the meetings.

58. Sandra has never threatened anyone, she has no violent history, and this did not occur until Plaintiffs began criticizing the School Board's pro-gun policies.

59. In addition, every time Billy says the words "pro-gun agenda" in a meeting, the School Board tells him he cannot say those words and threatens to remove him from the meeting.

60. Thus, in a shocking display of its censorial power, the School Board has gone so far as to ban Billy from saying the words "pro-gun agenda."

61. To make matters worse, the School Board also sent Billy and his wife a letter threatening to permanently ban them from school property.

62. School Board President, Mr. French, lives near Billy and his wife.

63. Mr. French has invited his friends over to his home in order to photograph Billy's home address and license plates and to even harass and threaten Billy's guests.

64. Mr. French has then conspired with his friends to place Billy's private information on Facebook specifically to intimidate Plaintiffs and to chill their speech.

**STATEMENT OF CLAIMS**

**Count 1
42 U.S.C.§ 1983 – First Amendment Violation
(freedom of speech)**

65. Plaintiffs restate all previous paragraphs.

66. Plaintiffs are politicly-minded individuals who desire to attend public School Board meetings and petition that Board with grievances.

67. Plaintiffs criticized the School Board regarding its decisions to arm their teachers.

68. Plaintiffs' speech is protected under the First Amendment of the United States Constitution because it addresses matters of great public concern.

69. The School Board has violated Plaintiffs' right of free expression in the following ways:

Facial Constitutional Claims

70. The School Board Rules impose facially-unconstitutional restrictions on the speech of Plaintiffs and others.

71. These include: a) the use of vague and undefined terms, including but not limited to "legitimate interest," "frivolous," "harassing," "abusive," "personally directed," "antagonistic," "obscene," and "irrelevant;" b) the vesting of unbridled discretion in the School Board and its President to define and apply these vague terms; c) the imposition of a prior restraint based upon registration requirements that are burdensome and ever-changing; d) the imposition of overbroad restrictions, including ones limiting public participation to residents of the district, on the right of free expression; and e) the

imposition of content-based restrictions on speech that are not the least restrictive means of achieving a compelling government interest.

<u>As-Applied Constitutional Claims</u>

72. The School Board retaliated against Billy when it had an armed deputy remove him for criticizing its decisions to arm teachers.

73. In order to restrain Plaintiffs' criticisms, the School Board fabricated non-existent rules.

74. The School Board used the non-existent personal-delivery rule to restrain Sandra's, Abby's, and Carolyn's ability to speak during public participation because of their viewpoints and identity.

75. The School Board has also used the fabricated residency rule to restrain Cullen's speech based on his identity and viewpoints.

76. The School Board continues to fabricate rules in order to frustrate, chill, punish, and restrain Plaintiffs from criticizing the School Board during public participation based on Plaintiffs' viewpoints and identity.

77. The School Board continues to threaten and intimidate Plaintiffs from exercising their First Amendment rights.

78. The School Board damaged Plaintiffs, it acted maliciously, and it intended to punish Plaintiffs for criticizing its conduct.

79. Plaintiffs are entitled to compensatory damages, attorney fees, litigation costs, and all expenses associated with this Action.

80. Plaintiffs further seek an order from this Court to enjoin the School Board from continuing to punish Plaintiffs for engaging in protected speech, restraining their speech, chilling their speech, and fabricating rules.

81. Plaintiffs further seek an order enjoining the School Board from continuing to enforce its unconstitutionally vague, overbroad and content-based rules.

82. Plaintiffs further seek an order protecting all members of the public from the same.

## **DEMAND FOR RELIEF**

**WHEREFORE** Plaintiffs respectfully request that this Court issue judgment in their favor on all counts and award them the following relief:

a) A declaration that the School Board's actions constitute a violation of Plaintiffs' First and Fourteenth Amendment rights;

b) Compensatory damages;

c) Injunctive relief precluding the School Board from restraining Plaintiffs' speech and offices and from otherwise denying their right to contact, petition, and access their elected officials or school employees;

d) Injunctive relief enjoining the School Board from placing unbridled discretion in the presiding offer to restrain speech based upon its overbroad, vague, and content-based rules;

e) An award of reasonable attorney fees pursuant to 42 USC 1988;

f) Litigation costs and expenses; and

g) Any other actual damages or equitable relief the Court deems fit under the circumstances.

Respectfully Submitted,

*/s/ Matt Miller-Novak*
**Matthew-Miller Novak (0091402)**
**Robert Thompson (0098126)**
GODBEY LAW LLC
708 Walnut Street, Suite 600
Cincinnati, Ohio 45202
P: 513-241-6650
F: 5153-241-6649
E: Matt@godbeylaw.com

and

*/s/ Jennifer Kinsley*
**Jennifer M. Kinsley (0071629)**
KINSLEY LAW OFFICE
Post Office Box 19478
Cincinnati, OH 45219
P: 513-708-2595
E: kinsleylawoffice@gmail.com

*Attorneys for Plaintiffs*

## VERIFICATION

I, Billy Ison, verify under penalty of perjury that I have read the facts outlined in this Complaint. I also verify under penalty of perjury the facts outlined in this Complaint are true to the best of my knowledge and recollection.

Billy Ison

I, as a notary of the State of Ohio, witnessed the above sign this Affidavit before me on 26th day of February 2019.

Notary Public

JAMIE FAULKNER
Notary Public, State of Ohio
My Commission Expires 03-06-2021