## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **BILLY ISON**, et al. | : | **Case Number:** 1:19-cv-155 |
| | : | |
| Plaintiffs, | : | **Judge:** Michael R. Barrett |
| -vs- | : | |
| | : | |
| **MADISON LOCAL SCHOOL** | : | |
| **BOARD** | : | |
| | : | |
| Defendant. | : | |

---

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

Plaintiffs move this Court for a temporary restraining order and a preliminary injunction under Federal Civil Rule 65 barring Defendant Madison Local School Board from enforcing Madison School District Rules 0.169(B), (G), and (I), which govern public comments at School Board meetings, and from imposing further prior restraints and content-based restrictions on speech not contained in these Rules.

A Memorandum in Support is attached to this Motion.

Respectfully Submitted,


*/s/ Matt Miller-Novak*
**Matthew-Miller Novak (0091402)**
**Robert Thompson (0098126)**
GODBEY LAW LLC
708 Walnut Street, Suite 600
Cincinnati, Ohio 45202
P: 513-241-6650
F: 5153-241-6649
E: Matt@godbeylaw.com

and

*/s/ Jennifer Kinsley*
**Jennifer M. Kinsley (0071629)**
KINSLEY LAW OFFICE
Post Office Box 19478
Cincinnati, OH 45219
P:  513-708-2595
E:  kinsleylawoffice@gmail.com

*Attorneys for Plaintiffs*

2

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION AND STATEMENT OF FACTS[1]

The Madison Local School Board ("the School Board") has engaged in a concerted campaign to unconstitutionally silence public criticism of its policies related to gun safety and school violence.  As part of this campaign, the School Board, through its Rules of Procedure, imposes content-based, vague, and overbroad prior restraints on expression. The School Board has also repeatedly imposed prior restraints on public participation at its meetings by concocting *ad hoc* requirements and procedural barriers that are not found in its Rules.  In combination, these actions are currently restraining Plaintiffs, all of whom are interested citizens with a desire to speak publicly at School Board meetings, from exercising their First Amendment rights.  As a result, and as discussed in greater detail below, there exists a constitutional emergency that necessitates the intervention of this Court.  Plaintiffs seek a temporary restraining order and preliminary injunction to restrain the School Board's unconstitutional Rules and to prohibit the imposition of additional prior restraints on their constitutionally protected right of free speech.

### A.    The School Board Has Repeatedly Silenced Plaintiffs' From Presenting Constitutionally Protected Speech.

In 2016, Madison Local Schools sadly experienced a school shooting on its campus.[2]  Four children were injured, but none were killed.[3]  In Spring of 2018, Defendant began discussing the potential of, and ultimately pursued, arming teachers with loaded firearms in its classrooms.[4]  Plaintiffs, all of whom are either related to a child who attends

---

[1] All factual allegations in this Motion rely upon those in the Verified Complaint under Civ. R. 65.

[2] *See* Plaintiff's Verified Complaint at ¶15.

[3] *Id*. at ¶16.

[4] *Id*. at ¶20.

Madison schools or have a close and supportive relationship with a Madison student, take issue with this decision. Plaintiff Sandra Ison ("Sandra") has a son who attends Madison Schools.[5] Plaintiff James Cullen ("Cullen") is Sandra's partner, and he is close to her son.[6] Abby Ison ("Abby") and Billy Ison ("Bill") are grandparents in the District.[7] Plaintiff Carolyn Patrick ("Patrick") is another concerned citizen in the Madison District.[8]

Sandra, Bill, Abby, Cullen, and Patrick all desire to address the School Board during the public participation portion of its meetings about its gun policy. In fact, Bill was partially permitted to speak at the May 2018 School Board meeting until he was interrupted by the School Board President and told he was not permitted to talk. He was then physically escorted out of the meeting by an armed police officer.[9]

According to School Board Rule 0169.1(C), Bill was required to register his intent to speak during public participation with 2 days' notice.[10] Bill satisfied this requirement. Bill also was permitted to speak for three minutes pursuant to School Board Rule 0169.1(E).[11] Nevertheless, approximately one and a half minutes into his comments, the School Board President began interrupting Bill and telling him he could not make his comments.[12] Given that the School Board initially allowed Bill to speak and only told him he could not after he offered comments critical of the School Board's policies, it appears that the President silenced Bill based on the content of his speech. The President then

---

[5] *Id.* at ¶¶2-7.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *See* Verified Complaint at ¶¶26-30.

[10] *Id.*; Exhibit 1 at C.

[11] *Id.*

[12] *Id.*

instructed the armed officer on duty to remove Bill from the meeting, well before his allotted three minutes had expired.[13]

The School Board did not stop there. In January of 2019, Sandra, Abby, James, and Patrick all attended the School Board meeting to speak.[14] However, the School Board refused to allow them to participate.[15] When they inquired as to why they were barred from public participation, the School Board cited their failure to register in person. (Bill submitted their notice for them in compliance with the two-day registration provision.)[16] But the School Board's Rules do not require in-person registration; the School Board simply added this requirement out of thin air and applied it only to silence citizens who were critical of its policies.

It took similar action with respect to Cullen, who does not live in the District, but does maintain a close, supportive relationship with Sandra's son, a student who attends Madison schools.[17] Cullen is not permitted to speak during the School Board meetings because he is not a resident of the District and cannot provide a photo ID or tax documents to prove residency in Madison, even though the School Board's rules require nothing of the sort.[18] The School Board therefore invented policies found nowhere in its Rules and applied them to Cullen because it did not want to hear what Cullen had to say.[19]

---

[13] *Id.*

[14] *Id.* at ¶¶30-40.

[15] *Id.*

[16] *Id.*

[17] Verified Complaint at ¶¶40-51.

[18] *Id.*; Exhibit 1.

[19] *Id.*

## B. The School Board's Rules Impose Content-Based, Vague, And Impermissibly Overbroad Restrictions on Protected Political Speech.

The School Board's campaign to silence its critics extends beyond Bill, Sandra, Abby, Cullen, and Patrick. In fact, the School Board maintains Rules governing public commentary at its meetings that vest unbridled and unrestrained discretion in the President to either allow or to censor a particular speaker or viewpoint. For example, Rule 0169.1(B) limits public participation to those with a "legitimate interest" in the School Board's actions. The term "legitimate interest" is not defined, although the School Board President retains the authority to apply the Rule in his discretion. As demonstrated by its decision to bar Cullen from speaking, the School Board applies this provision to prohibit speech it does not like.

Even more concerning, the presiding officer has the unbridled discretion to prohibit a member of the public from speaking and to physically remove the person if his comments are "abusive" or "antagonistic."[20] The Rules leave both these terms undefined. However, a simple dictionary search reveals that an "antagonist" is someone who opposes a subject or is an adversary. As such, the Rules actually limit public comments to those which are in agreement with the Board's actions and outright prohibit comments that are in opposition to the School Board's policies, actions, and decisions. There can be no more shocking example of a content-based restriction on protected political expression than that.

To make matters worse, the Rules also give the presiding officer the power to remove a speaker if her comments are directed toward one individual on the Board, rather

---

[20] *Id.* at I.2.

than the Board as a whole.[21]  Therefore, Defendant has given the presiding officer the power to decide whether a speaker's comments are legitimate or annoying and to remove that person to silence his or her viewpoints.  And this is exactly the action the School Board took when it silenced Bill and physically forced him to leave.  Both the Rules and the School Board's application of them have therefore been used to censor the School Board's critics.

## II.    THE COURT SHOULD ISSUED A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

The School Board's Rules of Procedure, namely Rule 0169.1(B), (G), and (I), are blatantly unconstitutional, and both a temporary restraining order and a preliminary injunction are proper.  In deciding to grant a preliminary injunction and a temporary restraining order, courts should evaluate: (1) whether a plaintiff has a strong likelihood of success on the merits of this action; (2) whether a plaintiff would suffer irreparable injury without the injunction; (3) whether issuing the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.[22] These "are factors to be balanced, not prerequisites that must be met."[23]  The degree of proof necessary for each factor depends on the strength of the other factors.[24]

---

[21] See Exhibit 1.  Rule I.2. permits the presiding officer to remove someone if her comments are "personally directed."

[22] *Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.*, 110 F.3d 318, 322 (6th Cir. 1997).

[23] *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003).

[24] *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 657 (6th Cir. 1996).

### A. Plaintiffs Will Succeed on the Merits.

1. <u>The School Board's Rules Violate the First Amendment on their Face.</u>

#### a. The School Board's rules are vague and overly broad.

It is well-established that courts may review and invalidate laws that facially regulate protected expression.[25] Courts should not tolerate government policies that are vague and lack objective standards.[26] The Supreme Court has rejected regulations restricting "vulgar" or "indecent" speech.[27] The Supreme Court also specifically wrote in *Ashcroft v. Free Speech Coalition* and other cases that governments cannot regulate speech that is "offending [to] our sensibilities."[28]

In *Cohen v. California*, a protestor was in a municipal courthouse wearing a jacket which bore the words "Fuck the Draft."[29] The protestor did not threaten anyone or threaten to engage in violent conduct.[30] The protestor did not make any loud or unusual noise.[31] Nonetheless, he was arrested for engaging in "offensive conduct."[32] The appellate

---

[25] *Aubrey v. Cincinnati Reds*, 841 F.Supp. 229, 232-3 (S.D. Ohio 1993) (citing *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992)); *Board of Airport Comm'rs of Los Angeles v. Jews for Jesus*, 482 U.S. 569, 574, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987).

[26] *See Aubrey v. Cincinnati Reds*, 841 F.Supp. 229 (S.D. Ohio 1993).

[27] *Id.* (citing *Cohen v. California*, 403 U.S. 15, 25, 91 S.Ct. 1780, 1788, 29 L.Ed.2d 284 (1971)) ("one man's vulgarity is another man's lyric").

[28] *Free Speech Coalition*, 535 U.S. 234, 245, 122 S.Ct. 1389, 152 L.Ed.2d 403, (2002) (quoting *FCC v. Pacifica Foundation*, 438 U.S. 726, 745 (1978) ("[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it")); see also *Reno v. American Civil Liberties Union*, 521 U.S. 844, 874 (1997) ("In evaluating the free speech rights of adults, we have made it perfectly clear that '[s]exual expression which is indecent but not obscene is protected by the First Amendment' ") (quoting *Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989)); *Carey v. Population Services Int'l*, 431 U.S. 678, 701 (1977) ("[T]he fact that protected speech may be offensive to some does not justify its suppression").

[29] *Cohen v. California*, 403 U.S. 15 at 16-7.

[30] *Id.*

[31] *Id.*

[32] *Id.*

8

court upheld the conviction reasoning that "offensive conduct" meant behavior which could provoke others to act violently.[33] The Supreme Court determined the law was unconstitutional. The Court recognized that the conviction rested solely on the offensiveness of the protestor's statements. The Court wrote that although governments may regulate fighting words and obscenity, they cannot regulate speech which is merely objectionable in public settings.[34] The Court continued that they saw no justification that substantial amounts of citizens will commit violence merely because a speaker's words attack their "sensibilities."[35] Most importantly, the Court wrote that the offensiveness statute was boundless in its application, and that the state had no right to "cleanse public debate" to the point where it is "palatable to the most squeamish among us."[36]

In another Supreme Court case, *Coates v. Cincinnati*, the Court struck down a statute regulating speech that was "annoying" as vague.[37] In *Coates*, there was a statute where speech was subject to punishment if it was annoying to others.[38] The Court acknowledged that "annoy" has a meaning that was commonly understood.[39] However, things that would annoy one person would not necessarily annoy another person.[40] Therefore, the Court held that "annoying" was unconstitutionally vague and overbroad because of its subjective nature.[41]

---

[33] *Id.*

[34] *Id.* at 19-21.

[35] *Id.* at 23.

[36] *Id.* at 25.

[37] *Coates v. City of Cincinnati,* 402 U.S. 611, 614 (1971).

[38] *Id.* at 611-12.

[39] *Id.* at 612-4.

[40] *Id.*

[41] *Id.* at 614.

This Court held recently in *Hicks v. Clermont County Board of Commissioners* that a public participation rule that regulated comments that "offends the sensibilities" was unconstitutionally vague because the term "sensibilities" depends on the "subjective sensibilities" of the government.[42]

Here, like *Coates* and *Hicks*, the term "antagonistic" is unconstitutionally vague. The word relies upon the School Board's subjective feelings in precisely the same manner as "annoy" or "sensibilities."  In fact, "annoy" is a synonym for the word "antagonize" according to Thesaurus.com.[43]  If the Supreme Court held that "annoy" was unconstitutionally vague, then its synonym is also unconstitutionally vague.

It is also unconstitutionally vague and that the School Board limits the identity of public speakers to those with a "legitimate interest."  There is no objective standard to determine what the School Board would consider "legitimate" from one meeting to the next.  Like "antagonistic," this term depends on the subjective feelings of the government official charged with making the decision.

In addition to its vagueness, the word "antagonistic" is also unconstitutionally overbroad.  The term sweeps within its coverage a vast amount of constitutionally-protected speech, including all public commentary that is adverse to or critical of the School Board.  One need look no further than the School Board's decision to silence Bill and remove him from the meeting as proof that the prohibition on "antagonistic" speech is used by the School Board to silence those who offer a point of view that is different from the Board's.  These vague and overbroad provisions should be immediately enjoined.

---

[42] See Case No. 1:17-cv-00677-TSB (S.D. Ohio 2018).

[43] https://www.thesaurus.com/browse/antagonize. (last visited Feb 26, 2019).

### b.  The School Board's Rules are content-based.

It is black letter law that the government may not discriminate against speech based on its content.[44]  Nor may the government impose vague and undefined restrictions on expression that subject speakers to the unbridled discretion of state officials.[45]

The School Board's Rules are clearly content-based.  At a bare minimum, the prohibition of "antagonistic" or opposing points of view discriminates based on viewpoint.  In addition, Rule 0169.1(I)(2) limits public comments to those directed at the Board as a whole, not to an individual Board member.  As a result, a person could not publicly urge a School Board member to change her mind or to adopt a particular policy.  Nor could a person publicly commend a particular School Board member for exemplary representation or a quiet good deed.  This Rule limits public commentary to speech that is generally applicable to all Board members, further evidence of the desire to permit certain messages while prohibiting others.

### c.  The School Board Imposed *Ad Hoc* Prior Restraints to Silence its Critics.

Even when a speech regulation facially comports with the First Amendment, the government retains the burden to establish that its rules are applied in a constitutional manner.[46]  When a government opens a forum to public participation, it cannot

---

[44] *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2227 (2015) ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.").

[45] *See, e.g., City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988).

[46] *Angeline v. Mahoning Cty. Agr. Soc.*, 993 F.Supp. 627, 633 (N.D. Ohio 1998).

discriminate against a person's identity.[47]  Although a government may regulate speech to conduct an orderly meeting, it cannot discriminate against a speaker's viewpoint.[48]

This Court held that a public participation regulation is not narrowly tailored when it is unnecessary to limit disruption in *Teufel v. Princeton City Sch. Dist. Bd. of Educ.*[49] In *Teufel*, a school board silenced a speaker who the board alleged made repetitive statements and disrupted the efficiency of the meeting.[50] The board's rules forbid repetitious statements to allegedly maintain an efficient meeting. However, the board's rules also limited all speakers to just three minutes a person.[51]  Furthermore, the school board in that case admitted that not many public speakers attend the meetings.[52]  The day the plaintiff in that case was silenced, nobody else wanted to speak.[53] Reviewing these facts, this Court held that no government interests were advanced when the board silenced the speaker, because the three-minute limit and absence of other speakers already advanced the government's interest of "maintaining an organized and time-efficient meeting."[54]

Here, the School Board has unconstitutionally applied its rules to limit speech that is in opposition to its policies.  In addition, it has fabricated rules, not narrowly tailored

---

[47] *City of Madison Joint School District No. 8 v. Wisconsin Employment Relations Commission*, 429 U.S. 167, 175-6, 97 S.Ct. 421,  (1976).

[48] *Good News Club v. Milford Central School*, 533 U.S. 98, 106-7, 121 S.Ct. 2093, (2001) (stating that limited forum regulation must not discriminate against viewpoint and must be reasonable in the purpose served by the forum).

[49] *Teufel v. Princeton City Sch. Dist. Bd. of Educ.*, Case No. 1:12-cv-355, 2013 WL 143808, 2013 U.S. Dist. LEXIS 4923 (S.D. Ohio Jan. 11, 2013).

[50] *Id*. at *36-42.

[51] *Id*.

[52] *Id*.

[53] *Id*.

[54] *Id*. at *40-41.

to any substantial interest, but designed purely to silence critical viewpoints.  For example, the School Board has informed Plaintiffs that they may not speak unless they personally deliver a registration form, but this requirement does not exist in its Rules.  Regardless, the School Board has time limits in place to protect the efficiency of its meetings.  Moreover, requiring people to take a day off work to hand deliver their own registrations is not narrowly tailored to any legitimate interest in conducting orderly meetings.

The School Board has also concocted a requirement that individuals desiring to speak present a photo ID or tax returns to document residency in the District.  This limitation also does not exist in the Rules.  On the contrary, the School Board's rules state — albeit vaguely — that any person with legitimate interest in the Board's actions may speak.  As stated above, the three-minute time limitation already ensures an efficient meeting.  Thus, the residency rule, if it in fact existed, would restrict more speech than necessary and would discriminate based on identity.  For example, if a divorced father of a child who attends Madison schools lives in a neighboring school district, he would be unable to address the School Board that actually educates his child.  Surely, the First Amendment does not permit such an absurd and arbitrary result.

### B.  Plaintiffs Will Suffer Irreparable Injury Without Injunctive Relief.

Any damage to the First Amendment right of free speech is irreparable.[55]  Plaintiffs are therefore already suffering irreparable injury.  The School Board has used its vague, overbroad, content-based, and fabricated rules to silence Plaintiffs' statements.  Further, Plaintiffs and the public cannot fairly comply with rules which seem to change on a whim.

---

[55] *Elrod v. Burns*, 427 U.S. 327 (1986).

More importantly, Plaintiff James Cullen cannot currently speak at all, and neither can any divorced parent who resides outside of the District. The ongoing damage to Plaintiffs' First Amendment rights necessitates injunctive relief.

### C. Injunctive Relief Will Not Harm Third Parties.

There is no risk injunction will harm third parties not before the Court. On the contrary, it will help third parties. Right now, people who have day jobs cannot speak unless they take time from work to hand-deliver a form. Moreover, if a divorced parent with a child in the district lives in another town, he could not even petition his son's school board with a grievance. The School Board clearly has no reservation to change the rules to pull the rug from under any critic who comes its way, and the Board is harming public expression to silence any criticism of its decisions relating to placing guns in classrooms with other peoples' children.

### D. The Public Needs Injunctive Relief.

The School Board's abuse of the First Amendment and its concerted attempt to silence protected political discourse is flagrant. It is one matter to negligently pass vague rules, and it is another to intentionally weaponize them. The School Board is intentionally weaponizing its vague rules and fabricating others to restrain critical speech and political rivals. It is hard to imagine a matter of greater public concern than deciding to place deadly weapons in the hands of a teacher surrounded by other peoples' children. If the School Board is so confident it is making this decision in the public's best interest, then the School Board must weather the public's response. The public's interest is best served by courts not allowing governments to make decisions regarding the lives of its children without the public having the opportunity to tell the government its thoughts about that decision.

14

As the Sixth Circuit has observed, the preservation of constitutional rights is always in the public interest.[56] The public interest here weighs in favor of enjoining the School Board's Rules and policies.

## III. CONCLUSION

Plaintiffs' First Amendment rights have been and are currently being irreparably damaged by the Madison School Board's facially unconstitutional public participation rules, by the Board's unconstitutional application of its rules, and by the Board's *ad hoc* imposition of prior restraints on the right of free expression in its public meetings. As a result, the Court should issue a temporary restraining order and preliminary injunction prohibiting the School Board from enforcing Rule 0169.1(B), (G), and (I); from applying its Rules to preclude Plaintiffs from speaking based on their identities or viewpoints or the content of their expression; and from concocting requirements and applying them to Plaintiffs to restrict their ability to participate in public meetings.

---

[56] *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

Respectfully Submitted,

***/s/ Matt Miller-Novak***
**Matthew-Miller Novak (0091402)**
**Robert Thompson (0098126)**
GODBEY LAW LLC
708 Walnut Street, Suite 600
Cincinnati, Ohio 45202
P: 513-241-6650
F: 5153-241-6649
E: Matt@godbeylaw.com

and

***/s/ Jennifer Kinsley***
**Jennifer M. Kinsley (0071629)**
KINSLEY LAW OFFICE
Post Office Box 19478
Cincinnati, OH 45219
P: 513-708-2595
E: kinsleylawoffice@gmail.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Plaintiffs' Counsel certify that they are serving this Motion and the Verified Complaint through personal service.

***/s/ Matt Miller-Novak***