**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Billy Ison, *et al.*,

        Plaintiffs,                        Case No.  1:19cv155

        v.                               Judge Michael R. Barrett

Madison Local School Board,

        Defendant.

## OPINION & ORDER

This matter is before the Court upon Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 2). Defendant Madison Local School Board filed a Response in Opposition (Doc. 13); and Plaintiffs filed a Reply (Doc. 14).

During the telephone conference held on May 20, 2019, the parties informed the Court that the Court could rule on Plaintiffs' request for injunctive relief without a hearing. However, Plaintiffs later filed a Supplemental Evidence in Support of their Reply. (Doc. 19). Defendant filed a Motion to Strike, or in the Alternative Supplement the Record. (Doc. 22). Because the Court finds that the evidence submitted by Plaintiffs in their supplement has no bearing on the Court's decision, Defendant's Motion to Strike is DENIED as MOOT.

For the reasons that follow, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction is DENIED.

## I. BACKGROUND

The parties do not dispute the factual basis for Plaintiffs' claims.

Plaintiff Sandra Ison has a son who attends school in the Madison Local School

District ("the District").  (Doc. 1, ¶ 10).  Plaintiff James Cullen is Sandra's partner.  (Doc. 1, ¶ 13).  Abby Ison and Billy Ison are the parents of Sandra Ison, and are the grandparents of her son.  (Doc. 1, ¶¶ 4, 5, 11, 12).  Plaintiff Carolyn Patrick is a concerned citizen who lives in the District.  (Doc. 1, ¶ 6).

On February 29, 2016, a student in a District school stood up in the cafeteria, fired a gun, and injured four students.  (Doc. 1, ¶¶ 15, 16).  As a result of the incident, Defendant Madison Local School Board ("the Board") began to discuss arming some of its administrators, teachers, and support staff.  (Doc. 1, ¶ 20).

The Board first discussed the idea during its March 26, 2018 board meeting. (Doc. 13-4, Dr. Lisa Tuttle-Huff Decl., PAGEID# 118).  At its next meeting, on April 24, 2018, the Board considered and voted on a resolution to allow armed staff in school safety zone.  (Doc. 13-4, Tuttle-Huff Decl., PAGEID# 122).  During the meeting, Sandra Ison, Abby Ison and Billy Ison all spoke.  (Id.)  During the Board's next meeting, on May 22, 2018, eight individuals spoke, including Sandra Ison, Abby Ison and Billy Ison. (Doc. 13-4, Tuttle-Huff Decl., PAGEID# 136-137).

On July 13, 2018, the Board held an open forum in the high school gym to hear anyone who wanted to speak about the Board's decision to allow armed staff.  (Doc. 13-2, David French Decl., ¶ 10, PAGEID# 99).  Anyone who signed up to speak before the start of the meeting was allowed to speak.  (Id.)  During this meeting, there were no time limits placed on the speakers.  (Id.)

Between May 2018 and March 2019, Plaintiffs have spoken out against the District's policy authorizing staff to carry firearms a total of approximately thirty-five times.  (Doc. 13-2, David French Decl., ¶ 9, PAGEID# 99).

The Board has adopted Madison School District Rule 0.169.1, titled "Public Participation Policy" (the "Policy"), to govern comments from the public during its meetings.  The current version of the Policy is as follows:

> The Board of Education recognizes the value to school governance of public comment on educational issues and the importance of allowing members of the public to express themselves on school matters of community interest.
>
> The Board is also committed to conducting Its meetings in a productive and efficient manner that assures that the regular agenda of the Board is completed in a reasonable period of time, honors the voluntary nature of the Board's time and using that time efficiently, and allows for a fair and adequate opportunity for input to be considered. Consequently, public participation at Board meetings will be governed by the following principles:
>
> A. Any person or group wishing to place an item on the agenda shall register their intent with the Superintendent no later than seven (7) days prior to the meeting and include:
>
> 1. name and address of the participant;
> 2. group affiliation, if and when appropriate;
> 3. topic to be addressed.
>
> Such requests shall be subject to the approval of the Superintendent and the Board President.
>
> B. In order to permit the fair and orderly expression of such comment, the Board shall provide a period for public participation at every regular meeting of the Board and publish rules to govern such participation in Board meetings.
>
> The presiding officer of each Board meeting at which public participation is permitted shall administer the rules of the Board for its conduct.
>
> The presiding officer shall be guided by the following rules:
>
> . . .
>
> B. Anyone having a legitimate interest in the actions of the Board may participate during the public portion of a meeting.
>
> C.  Attendees must register their Intention to participate in the public

portion of the meeting at least two (2) business days prior to the meeting upon their arrival at the meeting by completing the public participation form. An attendee who desires to participate in the public portion of the meeting must complete the public participation form in person and provide proof of residence in Madison Township, Butler County, Ohio.

 . . .

E. Each statement made by a participant shall be limited to three (3) minutes duration.

. . .

G. All statements shall be directed to the presiding officer; no person may address or question Board members individually.

 . . .

I. The presiding officer may:

1. prohibit public comments that are frivolous, repetitive, and/or harassing
2. interrupt, warn, or terminate a participant's statement when the statement is too lengthy, personally directed, abusive, off-topic, antagonistic, obscene, or irrelevant;
3. request any individual to leave the meeting when that person does not observe reasonable decorum;
4. request the assistance of law enforcement officers in the removal of a disorderly person when that person's conduct interferes with the orderly progress of the meeting;
5. call for a recess or an adjournment to another time when the lack of public decorum so interferes with the orderly conduct of the meeting as to warrant such action;
6. waive these rules.

J. The portion of the meeting during which the participation of the public is invited shall be limited to thirty (30) minutes.

(Doc. 13-4, PAGEID# 159-160).

Plaintiffs explain that during the May 22, 2018 board meeting, Bill Ison was only permitted to use half of his allotted three minutes. Plaintiffs maintain that the Board allowed Bill to speak, but then silenced him after he offered comments critical of the Board's policies. Defendants have a slightly different take on what occurred. David

French, President of the Board, explains that during the course of his comments, Bill Ison made comments that were threatening. (Doc. 13-2, David French Decl., ¶ 8, PAGEID# 99). French explains that he interrupted Ison and asked him to stop making threatening comments, or otherwise end his comments, and sit down. (Id.) French says that Ison continued, but as he began to conclude, another board member interrupted Ison and asked him to stop making false and slanderous statements. (Id.) After Ison ignored the board member and continued to speak, French asked the District's school resources officer, Deputy Kent Hall, to remove Ison. (Id.) As Deputy Hall walked over to Ison, he concluded his remarks, thanked those in attendance, and Deputy Hall walked Ison out of the library. (Id.)

Next, Plaintiffs explain that they attended the January 22, 2019 board meeting intending to speak, but because Abby Ison, Sandra Ison, and James Cullen did not submit their own Public Participation Form, they were not permitted to speak at the meeting. The District explains that Bill Ison completed the forms on their behalf, but the Policy requires that anyone who wishes to speak must submit their own Public Participation Form. (Doc. 13-2, David French Decl., ¶ 11, PAGEID# 100).[1]

Finally, Plaintiffs explain the Policy requires speakers who are registering to speak to show identification or a tax return in order to prove that they are residents of the District. (Doc. 2-2, PAGEID# 40).[2] Cullen states that under this policy, he would not be permitted to speak during Board meetings because he is not a resident of the District. (Doc. 14-3, James Cullen Decl., ¶¶ 2, 7).

[1] The Policy was not amended until February 12, 2019 to reflect this requirement. (Doc. 13-4, ¶10, PAGEID# 104; Doc. 13-4, PAGEID# 159).

[2] The residency requirement was also an amendment which was added to the Policy on February 12, 2019.

Plaintiffs move this Court under Federal Civil Rule 65 for a temporary restraining order and a preliminary injunction barring the Board from enforcing subsections (B), (C), and (I)(2) of the Policy.

## II. ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 65, the purpose of a temporary restraining order "is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996).

The Sixth Circuit has held that the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. *Workman v. Bredesen*, 486 F.3d 896 (6th Cir. 2007). In determining whether to grant or deny a temporary restraining order or a preliminary injunction, this Court must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc) (internal quotation marks omitted). The four considerations "are factors to be balanced, not prerequisites that must be met." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1984)). The movant bears the heavy burden of demonstrating his entitlement to that extraordinary remedy. *Overstreet v. Lexington–Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

By the unanimous agreement of the parties, the Court is deciding whether injunctive relief is warranted based upon the pleadings along with the affidavits and documents filed in the record.

**B. <u>Likelihood of success on the merits</u>**

**1. <u>42 U.S.C. § 1983</u>**

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Tuttle v. Oklahoma City*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) and *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992)).

Local governing bodies are "liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'caused one of its employees to violate the plaintiff's constitutional rights.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (brackets omitted) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Here, the parties appear to agree that the Board is subject to liability pursuant to the Policy. The only dispute is whether the Board's Policy violates the First Amendment.

**2. <u>First Amendment</u>**

The First Amendment prohibits the government from "abridging the freedom of speech." U.S. Const. Amend. I. Plaintiffs claim the Policy violates the First Amendment

right to speech because it is vague and overly broad. Plaintiffs also claim that the in-person registration requirement and the proof of residency requirement are invalid prior restraints on expression.

Plaintiffs state that they are bringing a facial challenge to the Policy, yet in their request for relief they seek: "a temporary restraining order and preliminary injunction prohibiting the School Board from enforcing Rule 0169.1(B), (G), and (I);[3] from applying its Rules to preclude Plaintiffs from speaking based on their identities or viewpoints or the content of their expression; and from concocting requirements and applying them to Plaintiffs to restrict their ability to participate in public meetings." (Doc. 2, PAGEID# 36). However, the Supreme Court has instructed that it does not matter whether a challenge is labeled as being a "facial" or "as-applied" challenge. *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). Instead, the important point is whether the "plaintiffs' claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs." *Id.*

Despite some of the language used in the requested relief, it appears that Plaintiffs are seeking the invalidation of particular sections of the Policy, and not merely a change in the application of the Policy to Plaintiffs. Because Plaintiffs' requested relief reaches beyond the particular circumstances of these Plaintiffs, the claims that are raised are properly reviewed as facial challenges to the Policy. Accordingly, Plaintiffs must satisfy the standard of a facial challenge "to the extent of that reach." *Id.*

---

[3]The references to these subsections correlate to the version of the Policy in place before February 12, 2019.

### a. <u>Standing</u>

The parties do not raise the issue of standing, but "[b]ecause the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (quoting *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

"Where plaintiffs challenge a statute or ordinance for vagueness or overbreadth, the Supreme Court has concluded that they have standing to assert the rights of third parties whose protected speech may have been impermissibly curtailed by the challenged prohibition, even though as applied to the plaintiffs themselves, the ordinances only curtailed unprotected expression." *Brandywine, Inc. v. City of Richmond, Kentucky*, 359 F.3d 830, 835 (6th Cir. 2004) (citing *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 59 n. 17, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)). However, as the Sixth Circuit has explained:

> While the doctrines of overbreadth and vagueness provide an exception to the traditional rules of standing and allow parties not yet affected by a statute to bring actions under the First Amendment based on a belief that a policy is so broad or unclear that it will have a chilling effect, *Coates v. City of Cincinnati*, 402 U.S. 611, 619–20, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1182 (6th Cir.1995), "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). "In order to have standing ... a litigant alleging chill must still establish that a concrete harm—*i.e.*, enforcement of a challenged statute—occurred or is imminent." *Morrison v. Bd. Of Educ. of Boyd Cnty.*, 521 F.3d 602, 610 (6th Cir. 2008) (citation omitted); *accord Prime Media, Inc.*, 485 F.3d at 350 ("Because overbreadth creates an exception only to the prudential standing inquiry, the Supreme Court has made clear that the injury in fact requirement still applies to overbreadth claims under the First Amendment.") (citation omitted).

*Savage v. Gee*, 665 F.3d 732, 740 (6th Cir. 2012). Here, one of the Plaintiffs—Bill Ison—stated in his Declaration that subsections (B), (C), and (I)(2) of the Policy were enforced against him. (Doc. 14-1, Ison Decl. ¶ 6).[4] Therefore, the Court concludes that Bill Ison has standing. However, Cullen is a different matter. He states that he does not live in the District, and because of the residency requirement: "I am seemingly banned for eternity and never able to speak again." (Doc. 14-2, Cullen Decl. ¶ 7, PAGEID# 180). Nowhere in Cullen's Declaration does he state that he was barred from speaking at a Board meeting because of the residency requirement. Instead, the record shows that Cullen was not permitted to speak at the January 22, 2019 meeting because Bill Ison submitted the Public Participation Form on Cullen's behalf, which did not meet the Policy requirement that Cullen submit the Public Participation Form in person. (Doc. 13-2, French Decl. ¶ 11, PAGEID# 100). Therefore, the Court concludes that Cullen does not have standing to challenge the residency requirement in the Policy. Because the other Plaintiffs all live within the District, none of the Plaintiffs have standing to assert this claim. Accordingly, the Court will not address Plaintiffs' section First Amendment claim as it relates to the residency requirement in subsection (c) in the Policy.[5]

### b. Overbreadth

"Generally, to succeed in a typical facial attack, a plaintiff must establish that no set of circumstances exists under which the statute would be valid. Or, a plaintiff would have to establish that the statute lacks any plainly legitimate sweep." *Speet v.*

---

[4]Plaintiffs also submitted the declaration of Emily Tobey, who stated that subsections (B), (C), and (I)(2) of the Policy were enforced against her. (Doc. 14-2, Tobey Decl. ¶ 12). However, Tobey is not a plaintiff in this case.

[5]Moreover, the Eleventh Circuit has rejected the claim that a similar residency requirement for speakers during a city council meeting was overbroad on its face and therefore violated the First Amendment. *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 802 (11th Cir. 2004).

*Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (internal citations and quotations omitted). However, "[w]here a plaintiff makes a facial challenge under the First Amendment to a statute's constitutionality, the 'facial challenge' is an 'overbreadth challenge.'" *Id.* (quoting *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc)). "Instead of having to prove that no circumstances exist in which the enforcement of the statute would be constitutional, the plaintiff bears a lesser burden: to demonstrate that a substantial number of instances exist in which the law cannot be applied constitutionally." *Id.* (internal quotation marks omitted). Nevertheless, invalidation for overbreadth is " ' "strong medicine" ' " that is not to be "casually employed." *United States v. Williams*, 553 U.S. 285, 293, 128 S. Ct. 1830, 1838, 170 L. Ed. 2d 650 (2008) (quoting *Los Angeles Police Dept. v. United Reporting Publishing Corp.*, 528 U.S. 32, 39, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999)).

A court's "first task" on a facial overbreadth challenge is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). "If it does not, then the overbreadth challenge must fail." *Id.* "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Instead, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* at 801 (citations omitted).

Plaintiffs point to only one provision of the Policy which they argue is

unconstitutionally overbroad: subsection (I)(2), which states that the presiding officer may "interrupt, warn, or terminate a participant's statement when the statement is . . . antagonistic." Plaintiffs explain that the term "antagonistic" sweeps within its coverage a vast amount of constitutionally-protected speech, including all public commentary that is adverse or critical of the Board.

The Supreme Court has stated:

The concept of substantial overbreadth is not readily reduced to an exact definition. It is clear, however, that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge. On the contrary, the requirement of substantial overbreadth stems from the underlying justification for the overbreadth exception itself—the interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the Court.

"The requirement of substantial overbreadth is directly derived from the purpose and nature of the doctrine. While a sweeping statute, or one incapable of limitation, has the potential to repeatedly chill the exercise of expressive activity by many individuals, the extent of deterrence of protected speech can be expected to decrease with the declining reach of the regulation." *New York v. Ferber*, 458 U.S. 747, 772, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.

*Members of the City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800-801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (footnote omitted) (citations omitted). However, at least two federal circuit courts have applied the applicable constitutional framework in lieu of a "substantial overbreadth" analysis when analyzing a facial overbreadth challenge under the First Amendment. *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127-28 (10th Cir. 2012) (considering plaintiff's facial challenge to city's ban on sex offenders entering public libraries by resorting to the applicable constitutional framework—*i.e.*, forum analysis); *Bruni v. City of Pittsburgh*, 824 F.3d 353, 363 (3d Cir.

2016) (considering plaintiffs' facial challenge to a buffer zone ordinance by resorting to the analytical framework governing free speech claims). As the Tenth Circuit explained:

> where a statute fails the relevant constitutional test (such as strict scrutiny, the *Ward* test,[6] or reasonableness review), it can no longer be constitutionally applied to anyone—and thus there is "no set of circumstances" in which the statute would be valid. The relevant constitutional test, however, remains the proper inquiry.

*Doe v. City of Albuquerque*, 667 F.3d at 1127.

Here, that proper analysis is a public forum analysis. A three-step forum analysis determines whether a restriction on speech on publicly-owned property violates the First Amendment: (1) whether the expression deserves protection, (2) the nature of the forum, and (3) whether the justification for excluding the expression satisfies the relevant standard. *McGlone v. Bell*, 681 F.3d 718, 731 (6th Cir. 2012).

As to the first step, the parties appear to agree that Plaintiffs' expression deserves protection. Regarding the second step, the Supreme Court has recognized four types of fora: nonpublic, public, designated public, and limited public. *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010). When opened to the public, a school board meeting is a limited public forum for discussion of subjects relating to the operation of the schools. *Featherstone v. Columbus City Sch. Dist. Bd. of Educ.*, 92 Fed.Appx. 279, 282 (6th Cir. 2004) (citing *City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 175–76, 97 S.Ct. 421, 426, 50 L.Ed.2d 376 (1976)). "Within such a forum, the government may regulate the time, place and

---

[6]In *Ward v. Rock Against Racism*, the Supreme Court held that "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." 491 U.S. 781, 791 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (internal quotation marks omitted).

manner of speech so long as the regulation is (1) 'content-neutral,' (2) 'narrowly tailored to serve a significant governmental interest' and (3) 'leave[s] open ample alternative channels for communication of the information.'" *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009) (quoting *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293, 295, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)).

A content-based restriction is one that "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2227, 192 L.Ed.2d 236 (2015). Plaintiffs argue that the Policy is content-based because it prohibits statements which are "antagonistic." In *Lowery v. Jefferson County. Board of Education*, the Sixth Circuit upheld similar policy which provided that "[t]he director of schools shall take appropriate steps to determine that appeals or appearances before the board are not frivolous, repetitive, nor harassing in nature." 586 F.3d 427, 433 (6th Cir. 2009). The policy provided that "[t]he chairman shall have the authority to terminate the remarks of any individual who does not adhere to the above rules or chooses to be abusive to an individual board member or the Board as a whole." *Id.* The Sixth Circuit found that the policy was content-neutral because its stated justification was to allow everyone a fair and adequate opportunity to be heard, to assure that the regular agenda of the board was completed, and to use the board's time efficiently—none of which concerned the subject of an individual's proposed speech. *Id.* The court also noted:

> Although the school board may exclude some types of "harassing" speech—if it has the potential to disrupt the meeting, or threatens illegal acts (as opposed to the filing of a non-frivolous lawsuit)—the board may not exclude speech merely because it criticizes school officials. *See Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). Save for rare circumstances—say, speech

promoting drug use at a high school event, *see Morse v. Frederick*, 551 U.S. 393, 403, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007)—the First Amendment forbids government officials from regulating speech based on their reaction to its point of view, *see Mosley*, 408 U.S. at 96, 92 S.Ct. 2286.

*Id*. at 435.

Plaintiffs maintain that subsection (I)(2) is content-based because it bars speech critical of the Board, *i.e.*, statements which are "antagonistic." Indeed, the Merriam-Webster dictionary defines "antagonistic" as "showing dislike or opposition." However, the Policy is not excluding speech merely because it criticizes school officials. Subsection (I)(2) applies to all statements which are "too lengthy, personally directed, abusive, off-topic, antagonistic, obscene, or irrelevant," and is not based on the reaction of the school officials to its point of view. *Cf. Hicks v. Clermont Cty. Bd. of Commissioners*, No. 1:17-CV-677, 2018 WL 6418895, at *2 (S.D. Ohio Dec. 6, 2018) (finding policy overbroad where speakers taking part in a county board of commissioners meeting where prohibited from making "any utterance, gesture, or display which outrages the sensibilities of the Board."). As such, the Policy is not based on the subject matter of the speech, but has "everything to do with conducting orderly, productive meetings." *Lowery*, 586 F.3d at 433; *Jones v. Heyman*, 888 F.2d 1328, 1329, 1332 (11th Cir. 1989) (concluding the mayor's removal of the plaintiff from city commission meeting resulted not from disapproval of his message but from his "decidedly antagonistic" attitude and failure to adhere to the agenda item under discussion).

With regard to the significant governmental interests, Defendant explains that the Policy has two purposes: (1) provide an opportunity for the Madison community to

speak about issues pertinent to the District and (2) allow the Board to conduct its official business at meetings efficiently and productively. These purposes are stated directly in the Policy. (Doc. 13-4, PAGEID# 159). As the Sixth Circuit explained in *Lowery*, these are significant governmental interests:

> Unstructured, chaotic school board meetings not only would be inefficient but also could deny other citizens the chance to make their voices heard. That is why public bodies may confine their meetings to specified subject matter.

*Id.* (citations and internal quotations omitted).

The Court finds that the Policy is narrowly tailored to serve these significant governmental interests. The Policy does not prohibit all speech, but only that speech which interferes with the board conducting its meetings in a productive and efficient manner. *Accord Teufel v. Princeton City Sch. Dist. Bd. of Educ.*, No. 1:12-CV-355, 2013 WL 143808, at *14 (S.D. Ohio Jan. 11, 2013) (finding that limiting repetitive, harassing, or frivolous language at a school board meeting does in fact advance legitimate government interests).

Finally, alternative channels of communication need not be the best means of communication if the intended audience can still be reached. *Phelps-Roper v. Strickland*, 539 F.3d 356, 372-73 (6th Cir. 2008). Here, the record shows that Plaintiffs have spoken out against the Board's decision to authorize staff to carry a concealed weapon more than thirty-five times at various meetings, including an open forum on July 13, 2018. (Doc. 13-2, French Decl., ¶¶ 9, 10, PAGEID# 99). Any community member has the ability to individually contact the Board or the District's Superintendent. (Doc. 13-2, French Decl., ¶ 15, PAGEID# 100). The Court finds that based on this evidence, the Policy allows ample alternative channels of communication.

Because the Court concludes that the Policy is a content-neutral, time, place and manner regulation, Plaintiffs are not likely to succeed on the merits of their overbreadth challenge.

### c. **Vagueness**

The void-for-vagueness doctrine is founded in the Due Process Clauses of the Fifth and Fourteenth Amendments. *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999) (citing *United States v. Haun*, 90 F.3d 1096, 1101 (6th Cir. 1996); *see also United States v. Williams*, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) ("Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment."). The void-for-vagueness doctrine is concerned with "two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253, 132 S. Ct. 2307, 2317, 183 L. Ed. 2d 234 (2012). When free speech is implicated, the Constitution demands "rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Id.* at 253-54. However, "[t]he degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Civil laws are held to a less strict vagueness standard than criminal laws "because the consequences of imprecision are qualitatively less severe." *Id.* at 498-99.

Plaintiffs maintain that two provisions of the Policy are impermissibly vague. First, Plaintiffs point to subsection (I)(2), which states that the presiding officer may "interrupt, warn, or terminate a participant's statement when the statement is . . . abusive . . . [or] antagonistic." Second, Plaintiffs point to subsection (B), which limits public participation to those with a "legitimate interest in the actions of the Board."

As the Sixth Circuit explained in *Lowery*:

> it is true that deciding what is repetitive or what is harassing requires some discretion, but that is unavoidable in this context. *See White*, 900 F.2d at 1426. For a school board to function, it must be able to keep its meetings in order, a requirement that necessarily demands that the moderator exercise some discretion over the number of speakers and the time allotted for each to speak. Courts have upheld removals from public meetings where there appears to have been no written policy at all and only a general prohibition on "disturb[ing] or interrupt [ing]" meetings, *see Jones*, 888 F.2d at 1329 n. 3, or "disrupt[ing], disturb [ing] or otherwise imped[ing]" them, see *White*, 900 F.2d at 1426, making it difficult to fault the board for its written policy even if it failed to anticipate every detail of what would and would not be allowed at meetings.

586 F.3d at 436. The Court finds that this rationale applies equally to the Policy. The cases cited by Plaintiffs—*Cohen v. California*, 403 U.S. 15, 91 S. Ct. 1780, 29 L. Ed. 2d 284 (1971) and *Coates v. City of Cincinnati*, 402 U.S. 611, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971)—are less applicable because both of those cases involved criminal offenses. *Accord Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1175 (D.N.M. 2014) (concluding that rule which barred speakers from making "any negative mention ... of any Village personnel, staff, or of the Governing Body" during the public input portion of village board meetings, "clears the extremely low bar that the void-for-vagueness doctrine sets for non-penal statutes.").

Because the Court concludes that the Policy is not unconstitutionally vague, Plaintiffs are not likely to succeed on the merits of their void-for-vagueness challenge.

### d. **Prior restraint**

Plaintiffs claim that the Policy's in-person registration requirement is an invalid prior restraint on expression.

"'A 'prior restraint' exists when speech is conditioned upon the prior approval of public officials,' and any system of prior restraint carries a heavy presumption against its validity." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*, 274 F.3d 377, 391 (6th Cir. 2001) (quoting *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2000)).  However, this Court concludes that the in-person registration requirement is not a "prior restraint," but is a reasonable regulation of the "time, place and manner" regulation.

In *Lowery v. Jefferson County Board of Education*, Sixth Circuit found that a policy which required citizens to apply and be approved to speak for five minutes at board meetings was not a prior restraint.   586 F.3d at 434.  The Sixth Circuit explained that the proper analysis to be applied could be found in the Supreme Court's decision in *Thomas v. Chicago Park District*, 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002). In *Thomas*, the plaintiff challenged a municipal park ordinance which required parties to obtain a permit before conducting large scale-events.  *Id*. at 317.   In upholding the permit requirement, the Supreme Court wrote:

> the object of the permit system ... is not to exclude communication of a particular content, but to coordinate multiple uses of limited space, to assure preservation of the park facilities, to prevent uses that are dangerous, unlawful, or impermissible under the Park District's rules, and to assure financial accountability for damage caused by the event.

*Id*. at 322, 122 S.Ct. 775.

The government's purpose in enacting a regulation is the primary factor in

determining whether a regulation is content-based or content-neutral:

> The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.

*Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661

(1989). Here, the President of the Board explains the purpose of the in-person

registration requirement:

> I received an email from Mr. Ison on January 26, 2019 regarding questions about the Public Participation Policy. He asked me why certain community members were not allowed to speak at the January 22, 2019 meeting while some community members were allowed to speak. I told him that the Public Participation Policy and the Public Participation Form required that an attendee register their intent and submit their own form. The reason for this was because the Board of Education became aware of a rising number of incidents where people were placed on the meeting agenda to speak during public participation, but had not personally submitted the form, and then would not show up or speak at the meeting. I informed him that this disrupted the Board of Education's business meeting.

(Doc. 13-2, French Decl. ¶ 12, PAGEID# 98). Because the purpose of the in-person

registration requirement is not to exclude communication of a particular content, the

Court concludes that it is a content-neutral regulation. Time, place and manner

regulations of this type are constitutional if they: (1) do not delegate overly broad

licensing discretion to a government official; (2) are narrowly tailored to serve a

significant governmental interest; and (3) leave open ample alternatives channels for

communication of the information. *Thomas*, 534 U.S. at 323, 122 S.Ct. 775. Such a

regulation, unlike a content-based restriction of speech, "need not be the least

restrictive or least intrusive means of" serving the government's interests. *McCullen v.*

*Coakley,* 573 U.S. 464, 486, 134 S. Ct. 2518, 2535, 189 L. Ed. 2d 502 (2014) (quoting *Ward v. Rock Against Racism*, 491 U.S. at 798, 109 S.Ct. 2746).  But the government still "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.*

Plaintiffs argue that in-person registration requirement prohibits more expression than necessary because citizens who cannot personally deliver forms due to work or other obligations will not be afforded the opportunity to speak.  However, the test is not convenience, but whether the in-person registration requirement is narrowly tailored. The Supreme Court has explained: "As we have emphasized on more than one occasion, when a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Hill v. Colorado*, 530 U.S. 703, 726, 120 S. Ct. 2480, 2494, 147 L. Ed. 2d 597 (2000).  Here, even if a citizen is not able to personally deliver the Public Participation Form, any community member has the ability to individually contact the Board or the District's Superintendent.  (Doc. 13-2, French Decl., ¶ 15, PAGEID# 100).  Therefore, the Court concludes that the Policy's in-person registration requirement is narrowly tailored to promote the substantial interests of the Board and leaves open ample alternatives. Plaintiffs therefore have not demonstrated a substantial likelihood of success on the merits on this ground.

## C. <u>Irreparable injury</u>

It is well-settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Bays v. City of Fairborn*,

668 F.3d 814, 825 (6th Cir. 2012). However, where the plaintiff does not have a likelihood of success on the merits, the argument that he or she is irreparably harmed by the deprivation of his First Amendment rights also fails. *McNeilly v. Land*, 684 F.3d 611, 621 (6th Cir. 2012).

Moreover, before the February 12, 2019 Board meeting, Bill Ison, Abby Ison and Sandra Ison submitted their Public Participation Forms in person and were permitted to speak during the public-participation period of the meeting. (Doc. 13-2, French Decl. ¶ 14; Doc. 13-4, PAGEID# 103-104). Therefore, the Court finds that this factor weighs against the granting of injunctive relief.

### D. **Substantial harm to others**

Defendant points out that if the Board is enjoined from enforcing subsections (B), (C), and (I)(2) of the Policy, the Board's meetings could become disorderly, the Board would be prevented from conducting its meetings in an orderly, efficient and productive manner. Because there is no evidence in the record to the contrary, the Court finds that this factor weighs against the granting of injunctive relief.

### E. **Public interest**

"The public as a whole has a significant interest in ensuring equal protection of the laws and protection of First Amendment liberties." *Jones v. Caruso*, 569 F.3d 258, 278 (6th Cir. 2009). However, "the determination of where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to prevent the violation of a party's constitutional rights." *Connection Distributing Co.*, 154 F.3d at 288. Because the Court concludes that Plaintiffs have not shown a likelihood of success on

their First Amendment claims, the Court finds that the granting of an injunction is not in the public interest.

## III. <u>CONCLUSION</u>

Based on the on the foregoing, Defendant's Motion to Strike, or in the Alternative Supplement the Record (Doc. 22) is **DENIED as MOOT**; and Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) is **DENIED.**

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
JUDGE MICHAEL R. BARRETT